**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

TRUSTEES OF THE PLUMBERS AND
STEAMFITTERS LOCAL 267 PENSION FUND,
ANNUITY FUND, INSURANCE FUND AND
JOINT APPRENTICESHIP AND TRAINING
FUND and PLUMBERS AND STEAMFITTERS
LOCAL 267, AFL-CIO,

                              Plaintiffs,

                   v.                                      5:09-CV-481
                                                            (FJS/ATB)

ICT MECHANICAL SERVICES, INC.,

                              Defendant.

---

**APPEARANCES**                                        **OF COUNSEL**

**CHAMBERLAIN, D'AMANDA,**            **MICHAEL T. HARREN, ESQ.**
**OPPENHEIMER & GREENFIELD LLP**
1600 Crossroads Building
Two State Street
Rochester, New York 14614
Attorneys for Plaintiffs

**ICT MECHANICAL SERVICES, INC.**       **NO APPEARANCE**
1924 Grand Central Avenue
Horseheads, New York 14845
Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs, Trustees of the Plumbers and Steamfitters Local 267 Pension Fund, Annuity

Fund, Insurance Fund and Joint Apprenticeship and Training Fund ("Plaintiff Funds"), and

Plumbers and Steamfitters Local 267, AFL-CIO ("Plaintiff Union") commenced this action on

April 24, 2009.  *See* Dkt. No. 1.  On May 1, 2009, Plaintiffs served the summons and complaint on Defendant.  *See id.*  Defendant never interposed an answer or otherwise moved as to the complaint.  On August 27, 2009, Plaintiffs filed a request for entry of default, *see* Dkt. No. 6; and, on August 28, 2009, the Clerk of the Court entered a Notice of Default against Defendant for failure to plead or otherwise respond to the complaint, *see* Dkt. No. 7.  Plaintiffs filed their first motion for entry of a default judgment on October 9, 2009.  *See* Dkt. No. 8.  Subsequent to filing that motion, Plaintiffs learned that there was an additional officer of Defendant who could prove to be an indispensable party.  *See* Dkt. No. 16, Affirmation of Michael Harren dated February 3, 2011, at ¶ 5.  Therefore, with the Court's permission, Plaintiffs withdrew their motion for entry of a default judgment.  *See id.* at ¶ 6; Dkt. No. 10; Text Order dated November 10, 2009.

Plaintiffs filed an amended complaint on January 6, 2010, *see* Dkt. No. 11; and, thereafter, they personally served the amended complaint on Steven Morris, the additional corporate officer.  *See* Dkt. No. 16 at ¶ 7.  Following service of process, Mr. Morris' counsel notified Plaintiffs that Mr. Morris had filed a petition in Bankruptcy Court.  *See id.* at ¶ 8.  Thereafter, pursuant to Rule 41 of the Federal Rules of Civil Procedure, Plaintiffs filed a notice of dismissal with the Court as to their claims against Ronald Lampman and Steven Morris individually.  *See id.* at ¶ 9; Dkt. No. 15.

On October 11, 2011, Plaintiffs filed their second motion for entry of a default judgment against Defendant ICT Mechanical Services, Inc. in which they sought the same amounts that they sought in the original motion.  *See* Dkt. No. 16.  Defendant did not respond to this motion.

## II. BACKGROUND

At all relevant times, Defendant was subject to the provisions of a collective bargaining agreement between Plaintiff Union and the Mechanical Trades and Master Plumbers Association of Central New York, Inc. *See* Dkt. No. 16-1, Affidavit of Michael Nanno sworn to September 23, 2009 ("Nanno Aff."), at ¶ 3. This collective bargaining agreement incorporated by reference the Agreements and Declarations of Trust that created Plaintiff Funds. *See id.* at ¶ 4. The collective bargaining agreement required the employer to make contributions to Plaintiff Funds for each hour worked under the terms of the agreement and required the employer to deduct dues from employees' wages and remit them to Plaintiff Union. *See id.* at ¶ 5.

During the period from December 29, 2008, to April 26, 2009, Defendant employed members of Plaintiff Union under the terms of the collective bargaining agreement. *See id.* at ¶ 6. Pursuant to the collective bargaining agreement, Defendant filed periodic reports with Plaintiff Funds of the hours that members of Plaintiff Union worked. *See id.* at ¶ 7 & Exhibit "A" attached thereto. Pursuant to those reports, Defendant owes Plaintiff Funds $25,257.54 in fringe benefit contributions and owes Plaintiff Union $1,736.99 in dues. *See id.* at ¶ 8 & Exhibit "A" attached thereto.[1]

To ensure the prompt collection of employer contributions, the Trustees of Plaintiff Funds adopted a collection policy. *See id.* at ¶ 9 & Exhibit "B" attached thereto. Under that policy, recovering employee benefit plans shall receive liquidated damages equal to twenty percent of total delinquent contributions. *See id.* at ¶ 10. Pursuant to this provision, Defendant

---

[1] Mr. Nanno states in his affidavit that Defendant owes Plaintiff Union $1,763.99 in dues. *See* Nanno Aff. at ¶ 8. However, a review of Exhibit "A" attached to his affidavit shows that Defendant, in fact, owes Plaintiff Union $1,736.99 in dues.

owes $5,051.51 in liquidated damages. *See id.* In addition, the collective bargaining agreement provides that a delinquent employer must pay interest on delinquent contributions at a rate of two percent per month, compounded. *See id.* at ¶ 11. Under this provision, Defendant owes Plaintiffs $4,280.62 in interest accrued through September 26, 2009. *See id.* at ¶ 11 & Exhibit "C" attached thereto.[2]

Finally, both the collection policy and the collective bargaining agreement require a delinquent employer to pay reasonable attorney's fees and costs. Under these provisions, Plaintiffs seek an award of attorney's fees and costs in the amount of $3,937.00.[3] *See* Dkt. No. 16

---

[2] In his affidavit, Mr. Nanno states that Defendant owes Plaintiffs $3,836.62 in interest through September 26, 2009. *See* Nanno Aff. at ¶ 11. However, a review of Exhibit "C" attached to that affidavit shows that Defendant, in fact, owes Plaintiffs $4,280.62 in interest through September 26, 2009. *See* Nanno Aff. at Exhibit "C" attached thereto.

[3] Although Mr. Nanno's Affidavit sworn to September 23, 2009, which Plaintiffs filed with their second motion for an entry of default judgment, refers to an Exhibit "D," no such Exhibit was attached to that copy of Mr. Nanno's Affidavit. *See* Dkt. 16-1. However, the Court referred back to Plaintiffs' first motion for an entry of default judgment, to which was attached Mr. Nanno's September 23, 2009 Affidavit as well as the Exhibit "D" referenced therein. Exhibit "D" is the Affirmation of Michael T. Harren dated October 9, 2009, in support of Plaintiffs' request for entry of a default judgment. *See* Dkt. No. 8-3. In that October 9, 2009 Affirmation, Mr. Harren states that,

> [i]n representing Plaintiffs in this matter, we have billed $3,287.00 in legal fees and costs. An itemized list of billed fees and costs is attached as Exhibit 5. In addition, we estimate that we will incur additional fees in connection with securing and docketing the requested judgment in the amount of $650.00. We are seeking an award of attorneys' fees and costs in the amount of $3,937.00.

*See id.* at ¶ 12.

The total amount of $3,9370.00 is comprised of the $3,287.00 in attorneys fees set forth in Exhibit "5", the additional $650.00 that Plaintiffs' counsel estimates he will incur, and $535.00 in litigation costs.

-4-

at WHEREFORE clause.

Currently before the Court is Plaintiffs' motion for entry of a default judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, against Defendant.

## III. DISCUSSION

### A. Standard of review

When a court considers a motion for the entry of a default judgment, it must "accept[] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). However, the court cannot construe the damages alleged in the complaint as true. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted). Rather, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citation omitted). This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Section 1145 of Title 29 of the United States Code provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

If an employer violates § 1145, 29 U.S.C. § 1132(g)(2) provides that,

> [i]n any action under this subchapter by a fiduciary for or on behalf
> of a plan to enforce section 1145 of this title in which a judgment
> in favor of the plan is awarded, the court shall award the plan –
>
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of –
>>> (i) interest on the unpaid
>>> contributions, or
>>> (ii) liquidated damages provided for
>>> under the plan in an amount not in
>>> excess of 20 percent (or such higher
>>> percentage as may be permitted
>>> under Federal or State law) of the
>>> amount determined by the court
>>> under subparagraph (A),
>>
>> (D) reasonable attorney's fees and costs of the
>> action, to be paid by the defendant, and
>> (E) such other legal or equitable relief as the court
>> deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions
> shall be determined by using the rate provided under the plan, or, if
> none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g).

Since Defendant is an employer obligated to make contributions to Plaintiffs under its collective bargaining agreement and has not made those required payments, the Court will apply the provisions of § 1132(g)(2) to calculate Plaintiffs' damages.

**B.     Calculation of Plaintiffs' damages**

*1. Unpaid contributions and dues*

Plaintiffs have submitted evidence that Defendant owes Plaintiff Funds a total of $25,257.54 in fringe benefits and owes Plaintiff Union $1,736.99 in dues. *See* Nanno Aff. at ¶ 8

& Exhibit "A" attached thereto.  Accordingly, the Court awards Plaintiff Funds **$25,257.54** in fringe benefits and Plaintiff Union **$1,736.99** in dues as part of their judgment against Defendant.

### *2. Interest on unpaid contributions*

Pursuant to the collection policy, if Defendant fails timely to remit the monies due, it is liable for interest on the unpaid and untimely paid contributions to Plaintiffs at the rate of 2% per month, compounded.  *See* Nanno Aff. at ¶ 11 & Exhibit "C" attached thereto.  Using this figure, Plaintiffs submit that Defendant owes them $4,280.62 in interest through September 26, 2009.  *See* Nanno Aff. at ¶ 11 & Exhibit "C" attached thereto.  Accordingly, the Court awards Plaintiffs **$4,280.62** in interest as part of their judgment against Defendant.

### *3. Liquidated damages*

Plaintiffs are entitled to liquidated damages equal to the greater of (1) the interest on the unpaid contributions or (2) the liquidated damages provided for under the collective bargaining agreement in an amount that does not exceed twenty percent of the unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(C).  In this case, Plaintiffs submit that Defendant owes them $5,051.51 in liquidated damages.  *See* Nanno Aff. at ¶ 10 & Exhibit "B" attached thereto.  Accordingly, the Court awards Plaintiffs **$5,051.51** in liquidated damages as part of their judgment against Defendant.

*4. Attorney's fees and costs*

Under the collective bargaining agreement and the collection policy and 29 U.S.C. § 1132(g)(2)(D), Defendant is liable for reasonable attorney's fees and costs that Plaintiffs incur in collecting the amounts that Defendant owes them.

Plaintiffs seek attorney's fees in the total amount of $2,752.00 for the work that their attorneys performed in this action from April 3, 2009, through September 24, 2009. *See* Dkt. No. 8-3 at 23-24. In addition, Plaintiffs' counsel states that he estimates that he will incur additional fees in the amount of $650.00 in securing and docketing the requested judgment. *See* Dkt. No. 8-3, Herran Aff. dated October 9, 2009, at ¶ 12. Although Plaintiffs have submitted what appear to be contemporaneous time records, these records do not indicate how many hours counsel expended on each task or the hourly rate counsel charged for such work. Furthermore, although the Court assumes that the initials "MTH" refer to Michael T. Herran, the Court has no idea to whom the initials "RGM" refer.

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit abandoned the use of the term "lodestar" when calculating an award of attorney's fees. *See id.* at 190 at n.4 (noting, however, that it did "not purport to require future panels of this court to abandon the term – it is too well entrenched . . . ."). In its place, the court stated that it thought that

> the better course – and the one most consistent with attorney's fees jurisprudence – [was] for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that [this] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.

*Id.*

The court then defined the term "reasonable hourly rate" as "the rate a paying client would be willing to pay." *Id.* The court explained that, "[i]n determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors;[4] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* Finally, the court instructed that "[t]he district court should . . . use th[e] reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" *Id.*

Moreover, as the Second Circuit explained in *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.2d 204 (2d Cir. 2005), "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Id.* at 209. This inquiry "may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id.* (citations omitted). However, the court must also evaluate

---

[4] The *Johnson* factors are as follows:

> (1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . . (9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he "undesirability" of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

the evidence that the parties proffer, keeping in mind that "the fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." *Id.* (citation omitted). Finally, the Second Circuit has held that "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463, 2469-70, 105 L. Ed. 2d 229 (1989)).

In the present matter, the Court has none of the information that it needs to make a determination about whether the attorney's fees that Plaintiffs are seeking are reasonable. Therefore, the Court denies Plaintiffs' request for attorney's fees without prejudice and directs Plaintiffs' counsel to file contemporaneous time records that reflect the number of hours that each attorney expended on each entry and the hourly rate that each attorney charged for said work. In addition, the Court instructs Plaintiffs' counsel to identify to whom the initials "MTH" and "RGM" refer and to provide a brief summary of the experience of each of these individuals.

Plaintiffs are also entitled to recover costs associated with this litigation, including copying costs, facsimile costs, filing fees, postage and delivery costs, costs associated with the service of the summons and complaint, and computer research costs. In their submissions, Plaintiffs state that they have expended **$535.00** on such items, specifically for filing fees and service of process. *See* Dkt. No. 8-3 at 24. Accordingly, the Court awards them this amount for their litigation costs as part of their damages award.

## IV. CONCLUSION

After reviewing Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for entry of a default judgment against Defendant is **GRANTED with respect to liability**; and the Court further

**ORDERS** that Plaintiffs' motion for entry of a default judgment against Defendant is **GRANTED in part and DENIED in part without prejudice with respect to damages**. The Court **GRANTS** Plaintiffs' motion for entry of default judgment with respect to damages in the amount of **$36,861.66**, which is comprised of the following items: **$25,257.54** in fringe benefits, **$1,736.99** in dues, **$4,280.62** in interest, **$5,051.51** in liquidated damages, and **$535.00** in litigation costs. The Court **DENIES without prejudice** Plaintiffs' motion for entry of a default judgment with respect to the requested attorney's fees; and the Court further

**ORDERS** that within **ten days** of the date of this Memorandum-Decision and Order, Plaintiffs' counsel shall file documentation, including contemporaneous time records that accurately reflect the **hours** that Plaintiffs' counsel expended on each task that they performed in this action and the **hourly rate** that Plaintiffs' counsel charged for such services. In addition, the

Court instructs Plaintiffs' counsel **to identify to whom the initials "MTH" and "RGM" refer** and **to provide a brief description of the experience of each of those individuals**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in this case in favor of Plaintiffs in the amount of **$36,861.66** and close this case.[5]

**IT IS SO ORDERED.**

Dated: March 12, 2013
       Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[5] Once the Court has had an opportunity to review the information that it has instructed Plaintiffs to submit regarding their request for attorney's fees, the Court will determine what that award should be and will issue an Order instructing the Clerk of the Court to amend the judgment accordingly.